UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ELIZABETH L. SANNER,

    Plaintiff,

v.

AIRBNB, INC., et. al,

    Defendant.

CIVIL ACTION NO. 3:22-CV-00274

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court are two motions for summary judgment in a personal injury action brought under Pennsylvania law. (Doc. 34; Doc. 37). On February 23, 2022, Elizabeth L. Sanner ("Sanner") initiated this action by filing the original complaint against Defendants Airbnb Inc. ("Airbnb"), Evolve, d/b/a Evolve Vacation Rental ("Evolve"), and Elona and Xhemali Lopari (collectively, "the Loparis"). (Doc. 1). On April 25, 2022, the Loparis filed an answer to the original complaint. (Doc. 11). On May 31, 2022, Sanner filed an amended complaint naming Harry Amato ("Amato") as a Defendant. (Doc. 14). On June 27, 2022, Amato filed an answer to the amended complaint and on August 1, 2022, with affirmative defenses as well as a cross-claim against the Loparis. (Doc. 23; Doc. 28). On August 22, 2022 the Loparis filed an answer to Amato's cross-claim. (Doc. 29). On June 30, 2023, Amato filed a motion for summary judgment, a brief in support, and a statement of material facts with exhibits. (Doc. 34; Doc. 35; Doc. 36; Doc. 36-1). On July 14, 2023, Sanner filed a brief in opposition to Amato's motion for summary judgment with accompanying exhibits. (Doc. 40; Doc. 40-1; Doc. 40-2; Doc. 40-3; Doc. 40-4; Doc. 40-5; Doc. 40-6; Doc. 40-7; Doc, 40-8; Doc. 40-9; Doc. 40-10; Doc. 40-11; Doc. 40-12; Doc. 40-13; Doc. 40-14; Doc. 40-15; Doc. 40-16).

Sanner filed a statement of facts on July 20, 2023. (Doc. 41). Amato filed a reply brief on July 20, 2023, with exhibits. (Doc. 43; Doc. 43-1; Doc. 43-2). On July 5, 2023, the Loparis filed a motion for summary judgment, a brief in support, a statement of material facts, and accompanying exhibits. (Doc. 37; Doc. 38; Doc. 38-2; Doc. 39). On July 20, 2023, Sanner filed a brief in opposition to the Loparis' motion for summary judgment along with accompanying exhibits. (Doc. 42; Doc. 42-1; Doc. 42-2; Doc. 42-3; Doc. 42-4; Doc. 42-5; Doc. 42-6; Doc. 42-7; Doc. 42-8; Doc. 42-9; Doc. 42-10; Doc. 42-11; Doc. 42-12; Doc. 42-13; Doc. 42-14; Doc. 42-15; Doc. 42-16; Doc. 42-17). The Loparis' filed a reply brief on August 14, 2023. (Doc. 44) The Court struck the Loparis' reply brief as untimely on August 14, 2023. (Doc. 45).

On November 7, 2023, the Court conducted oral argument concerning both motions for summary judgment. (Doc. 34; Doc. 37). For the reasons set forth herein, both motions for summary judgment are **DENIED**. (Doc. 34; Doc. 37).

I.   **MOTION FOR SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir.

1994). A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

II.   **STATEMENT OF FACTS**

   A.   **AMATO'S STATEMENT OF FACTS**

This factual background is taken from Amato's statement of material facts and accompanying exhibits. (Doc. 36; Doc. 36-1, at 1-183). On February 5, 2021, Sanner, a New Jersey resident, traveled to 453 Skyline Dr., Blakeslee, Pennsylvania ("the premises") with several friends to stay for the weekend. (Doc. 36, ¶ 2; Doc. 36-1, at 32, 34). She and her friends arranged the stay on the home-sharing app, Airbnb.[1] (Doc. 36, ¶ 2; Doc. 36-1, at 32-34). Upon Sanner's arrival, the ground around the premises was covered with snow aside from the premises' driveway, where there were patches of ice.[2] (Doc. 36, ¶¶ 3-4; Doc. 36-1, at 38, 40-41). These patches of ice were still present the morning of February 6, 2021, when Sanner and her friends left the premises to go snow-tubing at Camelback Resort.[3] (Doc. 36, ¶ 6; Doc. 36-1, at 46). The ice was still on the driveway when Sanner returned that afternoon. (Doc. 36, ¶ 7; Doc. 36-1, at 47). Sanner was unable to offer testimony regarding the appearance of the ice on February 6, 2021. (Doc. 36, ¶ 8; Doc. 36-1, at 47). Sanner did not contact anyone at that time to inform them about the presence of ice in the driveway and was not aware of her friends

---

[1] Sanner denies the assertion that she arranged the trip with her friends, stating "she was not involved in the booking of the premises, had no contact with anyone associated with Airbnb, and that the booking of the premises was handled by Chris Moreno." (Doc. 41, ¶ 2; Doc. 40-5, at 5; Doc. 40-6, at 4).

[2] Sanner responds to this fact by supplying, "she was able to see the patches of ice on the driveway as the driveway itself was not snow-covered, but there was snow in the yard." (Doc. 41, ¶ 3; Doc. 40-5, at 11).

[3] By way of response to this assertion, Sanner replies that "[t]here was still ice on the driveway; but because it was daylight [the group] could walk around the ice patches to go into the house." (Doc. 41, ¶ 6; Doc. 40-5, at 13).

doing so.[4] (Doc. 36, ¶ 9; Doc. 36-1, at 48). Sanner was aware that ice can be slippery. (Doc. 36, ¶ 5; Doc. 36-1, at 49).

The morning of the incident, February 7, 2021, it was snowing heavily. (Doc. 36, ¶ 10; Doc. 36-1, at 49-50). To avoid driving home in bad weather, Sanner and her friends decided to leave before their 11:00 AM check-out time. (Doc. 36, ¶ 11; Doc. 36-1, at 50). At some point during the morning of February 7, 2021, Sanner, while wearing boots with one-and-one-quarter inch heels, went outside to assist her friends in clearing snow off their cars with towels, as no snow-scrapers were available.[5] (Doc. 36, ¶¶ 12, 13, 15; Doc. 36-1, at 51-53, 56). At this time, the driveway was covered in snow. (Doc. 36, ¶ 14; Doc. 36-1, at 53). As Sanner walked between the two vehicles and the heavy snow continued falling, Sanner fell onto the driveway.[6] (Doc. 36, ¶¶ 16, 17; Doc. 36-1, at 50, 57). At no point did Sanner, or anyone else of whom she is aware of, inspect the ground to determine what caused her to fall. (Doc. 36, ¶ 18; Doc. 36-1, at 64). Sanner did not observe any ice on the driveway at the premises on

---

[4] By way of response to this assertion, Sanner states she had no knowledge of Amato, that he was next door, or that she was able to contact him regarding dangerous conditions. (Doc. 41, ¶ 9).

[5] By way of response to this assertion, Sanner adds "snow must be cleared from motor vehicle[s] pursuant 75 Pa.C.S.A. §3721." (Doc. 41, ¶ 15).

[6] Sanner admits these assertions but adds she "fell because of the pre-existing (for many days) ice and not because of the snow. In fact, Ms. Sanner testified that she slid on ice and when asked if she 'slid on snow or ice' she replied 'ice. . .'" Sanner also adds that she testified in her deposition that she "had slipped a few times, you know, throughout my life on ice. You kind of know that feeling" and that she "felt ice when she slipped," and it was "slippery and slick." (Doc. 41, ¶¶ 17, 18; Doc. 40-5, at 20-21, 23).

February 7, 2021.[7] (Doc. 36, ¶ 19; Doc. 36-1, at 66).

Amato submits that he had an oral agreement with the premise owners, the Loparis, to remove snow from the walkways of the premises within a reasonable time following the conclusion of a winter weather event. (Doc. 36, ¶ 20, Doc. 36-1, at 156). Amato further asserts that he was not expected to inspect the premises, or to remediate any conditions that may have formed due to circumstances unrelated to precipitation, such as in the event of a thaw and re-freeze. (Doc. 36, ¶ 21; Doc. 36-1, at 159, 164). Sanner denies these aessertions, averring Sanner denies this assertion, averring, "[i]t is denied that [Amato] had only an agreement to remove snow from the walkways of the premises. To the contrary, the [Loparis] provided verified responses to interrogatories, that Mr. Amato was responsible for ice removal as well" and "[i]n addition, when the owner, Mr. Lopari, was specifically asked who was responsible for making sure the driveway was clear of 'ice' as of 2/5/2021, he answered 'Mr. Amato was in charge of making sure the driveway was clean and not a slippery condition'" and "Mr. Lopari confirmed the same explicitly when asked if it was his 'testimony here today that it was Mr. Amato's responsibility to ensure that there was no ice on the driveway as of their check-in time on February 5, 2021' and he answered 'Yes.' []. In fact, Mr. Amato would even purchase the salt for the property, and then Mr. Lopari would reimburse him." (Doc. 41, ¶ 20; Doc. 40-9, at 5; Doc. 40-8, at 4-5, 10). Sanner denies this assertion, supplying, "Moving Defendant was expected to ensure the property was free from slippery conditions." (Doc. 41, ¶ 21)

---

[7] Sanner denies this assertion, stating, "[t]o the extent that this averment implies that the ice was capable of being observed, the same is denied. Ms. Sanner testified that she did not see ice because the driveway was covered with snow." (Doc. 41, ¶ 19; Doc. 40-5, at 23).

B. THE LOPARIS' STATEMENT OF FACTS[8]

This factual background is taken from the Loparis' statement of material facts and accompanying exhibits. (Doc. 39). This case arises from a slip and fall incident that took place on February 7, 2021, while Sanner and her friends were renting the Loparis' short-term rental property, the premises.[9] (Doc. 39, ¶ 1; Doc. 38-2, at 1-13). Sanner alleges the incident occurred in the driveway of the premises.[10] (Doc. 39, ¶ 2). The Loparis own the premises and hire Amato to perform snow removal services there.[11] (Doc. 39, ¶ 3). On February 5, 2021, Sanner traveled from New Jersey with her friends to spend the weekend at the premises. (Doc. 39, ¶ 4). Sanner testified that there were patches of ice on the driveway she could see when she

---

[8] The Court notes that in several instances, the Loparis have failed to provide clear citations to the record. In these instances, the Court has omitted the Loparis' citations to the record. However, the Court has considered the entire record in resolving the current motion.

[9] Sanner responds to this assertion; "[i]t is admitted only that this case arises from a slip-and- fall on ice on 2/7/2021 while Plaintiff was a business invitee on a short-term Airbnb rental property with an address of 435 Skyline Drive, Blakeslee, Pennsylvania. It is denied that Plaintiff was 'renting' the property. To the contrary, Ms. Sanner testified that she was not involved in the booking of the premises, had no contact with anyone associated with Airbnb, and that the booking of the premises was handled by Chris Moreno. [] The same was confirmed by Ms. Sanner's friend, Christopher Moreno, who testified that he 'went on Airbnb and found a place and then booked it.'" (Doc. 42-2, ¶ 1; Doc. 42-5, at 5-6; Doc. 42-6, at 5).

[10] Sanner responds, "[a]dmitted that Plaintiff fell on the driveway of the premises in question." (Doc. 42-2, ¶ 2).

[11] Sanner denies the assertion that Amato was not also hired for ice removal, contending that verified interrogatory responses provide that Amato was responsible for ice removal. (Doc. 42-2, ¶ 3). Sanner adds, "when the owner, Mr. Lopari, was specifically asked who was responsible for making sure the driveway was clear of 'ice' as of 2/5/2021, he answered 'Mr. Amato was in charge of making sure the driveway was clean and not a slippery condition.' [] Mr. Lopari confirmed the same explicitly when asked if it was his 'testimony here today that it was Mr. Amato's responsibility to ensure that there was no ice on the driveway as of their check-in time on February 5, 2021' and he answered 'Yes.' [] In fact, Mr. Amato would even purchase the salt for the property, and then Mr. Lopari would reimburse him." (Doc. 42-2, ¶ 3; Doc. 42-9, at 8, 4-5).

arrived on February 5, 2021.[12] (Doc. 39, ¶ 5). On February 6, 2021, when Sanner arrived back to the premises after she had gone snow tubing, there were patches of ice on the driveway that she was aware of but could avoid when walking from her car into the house. (Doc. 39, ¶ 7). Sanner never contacted anyone about the ice on February 5 or February 6, 2021.[13] (Doc. 39, ¶ 8; Doc. 38-2, at 18). Sanner is aware that ice is slippery. (Doc. 39, ¶ 9; Doc. 38-2, at 18).

On February 7, 2021, Sanner and her friends were set to leave the premises. (Doc. 39, ¶ 10). While their check-out time was 11:00 AM, they decided to check out early because there was "heavy snow" that morning and they wanted to avoid driving home in "bad weather." (Doc. 39, ¶¶ 11-13). Sanner's friends testified about the snow as follows: Joseph Glinski ("Glinski"), Sanner's boyfriend, stated he woke up to "heavy snowfall," that "impacted [the group's] departure time;" Stephanie Dimaggio ("Dimaggio"), Sanner's friend, testified the snow was "coming down decently;" Christopher Moreno, Sanner's friend and the trip organizer, recalled the snow "started slow and then picked up;" Robert Farulla, Sanner's friend, said when he woke up it was "starting to snow or snowing;" and Daphne Ragone testified "she was careful in the driveway on Sunday because she felt there were

---

[12] Sanner adds by way of response that while there was ice on the driveway, she could walk around it because it was daylight. (Doc. 42-2, ¶ 5; Doc. 42-5, at 10). Additionally, that the driveway was not covered in snow, but there was snow in the yard, and that she could avoid ice on the driveway because she could see it. (Doc. 42-2, ¶ 5; Doc. 42-5, at 8). However, that on February 7, 2021, the ice was not visible because it was covered with snow. (Doc. 42-2, ¶ 5).

[13] Sanner by way of response adds, "[a]dmitted that Plaintiff did not contact Moving Defendants. However, Plaintiff did not know that she could have potentially contacted defendant Harry Amato, as no guest was ever advised of his involvement in ensuring the safety of the property. In fact, co-Defendant Harry Amato agreed that the guests did not have access to the garage should any snow/ice equipment or treatment be left in the garage, and he took no steps to ensure the guests knew he was next door and handled snow issues." (Doc. 42-2, ¶ 8; Doc. 42-4, at 20-22; Doc. 42-12, at 2-10)

8

slippery conditions and active snowfall" as the group "left the premises."[14] (Doc. 39, ¶ 14; Doc. 38-2, at 21-44). On the morning of February 7, 2021, Sanner went outside wearing snow boots with a one-and-one-quarter inch heel to assist Glinski and Dimaggio with cleaning snow off their cars with a towel.[15] (Doc. 39, ¶ 15-16; Doc. 38-2, at 16). Glinski and Dimaggio pushed the snow onto the driveway's surface. (Doc. 39, ¶ 15; Doc. 38-2, at 16). Sanner recalled that at that time, the driveway was covered in snow.[16] (Doc. 39, ¶ 17; Doc. 38-2, at 16). According to Glinski, he pushed snow off his car with the towel to the left and the right for his car. (Doc. 39, ¶ 19). Dimaggio testified that she pushed the snow off her vehicle and admitted that the snow from the car was pushed onto the snow accumulation on the ground. (Doc. 39, ¶ 20; Doc. 38-2, at 29). Sanner testified she was between the two vehicles when she fell. (Doc. 39, ¶ 21). Sanner did not inspect what caused her fall or observe ice on the driveway of the premises on February 7, 2021.[17] (Doc. 39, ¶¶ 22, 23; Doc. 44-2, at 44-45).

---

[14] Sanner denies the implication that she slipped on snow, supplying that she testified that she slipped on ice and that she "knew she slipped on ice based on her experience both that day and with prior encounters with ice." (Doc. 42-2, ¶ 14; Doc. 42-5, at 16).

[15] Sanner, by way of response, includes the Loparis "had no snow removal equipment accessible to the guests to remove the snow from the driveway, such as snowblowers or shovels. Thus, there was to move the snow once cleared from the motor vehicles. Moreover, it is illegal not to remove snow/ice from motor vehicles in Pennsylvania prior to operating them on the roadways. Thus, Ms. Sanner, and the others, were doing what was required of them under Pennsylvania law prior to leaving." (Doc. 42-2, ¶ 15; Doc. 42-4, at 20).

[16] By way of further response, Sanner avers "she did not see the ice because the driveway was covered in snow." (Doc. 42-2, ¶ 17; Doc. 42-5, at 17).

[17] Sanner admits in part and denies in part this assertion. (Doc. 42-2, ¶ 22). Sanner submits, "[i]t is admitted only that Plaintiff testified that she did not do any kind of 'inspection' to determine the cause of her fall. However, it is denied that Plaintiff did not know that the cause of her fall was ice and that she testified to the same. In fact, Ms. Sanner testified that she slid on ice and when asked if she 'slid on snow or ice' she replied 'ice.'" (Doc. 42-2, ¶ 22;

III. **DISCUSSION**

    A. <u>AMATO AND THE LOPARIS ARE NOT ENTITLED TO SUMMARY JUDGMENT UNDER THE HILLS AND RIDGES DOCTRINE</u>

Under Pennsylvania law, landowners do not have a duty to always keep their property free of snow and ice. *Rinaldi v. Levine*, 176 A.2d 623 (Pa. 1962). "The 'hills and ridges' doctrine is a long[-]standing and well entrenched legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Convery v. Prussia Associates*, 2000 WL 233243, at *1 (E.D. Pa. 2000) (quoting *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1087 (Pa. Super. 1997)). "[A]n owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition." *Saris v. Charles,* 67 Pa. D. & C.4th 545, 550 (Com. Pl. 2004) (quoting *Gilligan v. Villanova University*, 584 A.2d 1005, 1007 (Pa. Super. 1991)). The hills and ridges doctrine does not apply to localized patches of ice or circumstances when the icy condition is created by human intervention. *Williams v. United States*, 507 F. Supp. 121, 123 (E.D. Pa. 1981) (quoting *Bacsick v. Barnes*, 341 A.2d 157, 160 (Pa. Super. 1975)). The doctrine only applies to situations where the ice is "the result of an entirely natural accumulation." *Williams*, 507 F. Supp. at 123.

---

Doc. 42-5, at 13). Also, Sanner admits that it was snowing on February 7, 2021, but that, "in any event, [Sanner] had no alternative path on which to walk to access the motor vehicles," and that Sanner had no duty to notify the Loparis of a dangerous condition. (Doc. 42-2, ¶ 24).

Amato argues that when Sanner arrived at the premises on February 5, 2021, the driveway was free of snow and therefore the dangerous condition was created naturally when snow began to fall on the morning of the incident. (Doc. 34, at 7). Amato asserts that Sanner "failed to produce evidence that she slipped and fell on ice that existed prior to the onset of the winter storm that occurred on February 7, 2021." (Doc. 43, at 2). The Loparis argue that while Sanner was aware there were ice patches on the driveway on February 5, 2021, the dangerous condition did not exist until "a few hours—if not minutes," before the incident when heavy snow began to fall. (Doc. 37, at 11). Sanner argues there were not "generally slippery conditions," but instead "isolated patches of ice." (Doc. 40, at 7; Doc. 42, at 45). Also, that the condition of the driveway was influenced by human intervention because on February 5, 2021, two days before Sanner's fall, Amato "performed snow removal services" at the premises. (Doc. 40, at 7; Doc. 42, at 12-13).

There is an issue of fact as to whether the snow and ice on the driveway was "the result of an entirely natural accumulation" *Williams*, 507 F. Supp. at 123; *see Tuft v. Giglio*, No. CV 3:20-643, 2022 WL 673734, at *4 (M.D. Pa. Mar. 7, 2022) (denying a motion for summary judgment because there were issues of material fact as to whether the icy conditions were the result of a "natural accumulation"). While the fact that it was snowing heavily on the day of the incident indicates the hills and ridges doctrine may be applicable, Amato's role in previously clearing the driveway raises a question as to whether the driveway's condition on February 7, 2021, was influenced by human intervention. (Doc. 40-3, at 10); *see Tuft*, 2022 WL 673734, at *4 (deciding there was an issue of material fact regarding whether the plaintiff's fall was the result of a "natural accumulation" because a snowy driveway had previously been plowed). As Amato points out, the parties have not provided definitive

11

evidence establishing either that Sanner fell on ice that existed prior to February 7, 2021, or because of new icy conditions caused by the morning storm. (Doc. 43, at 2). Additionally, a reasonable fact finder could determine the driveway's condition was also influenced by the snow deposited by Dimaggio's and Glinksi's car clearing. (Doc. 38-2, at 32). "Such human intervention could render the icy conditions of 'artificial origins,' unless it could be shown that there were intervening natural conditions which caused a thaw and refreeze." *Tuft*, 2022 WL 673734, at *4. Accordingly, Amato and the Loparis' motions for summary judgment are denied on these grounds.[18]

### B. Amato and the Loparis are not Entitled to Summary Judgment Under the Assumption of the Risk Doctrine

Assumption of the risk is analyzed in the context of determining whether a defendant owed a plaintiff a duty. *Kaplan v. Exxon Corp.*, 126 F.3d 221, 224–25 (3d Cir. 1997). As such, assumption of the risk is a question for the jury "unless reasonable minds could not disagree." *Kaplan*, 126 F.3d, at 225. To grant summary judgment on assumption of the risk, the Court must find—conclusively and beyond question—that: "(1) [the plaintiff] consciously appreciated the risks attending her action; (2) she assumed the risk of injury by engaging in the action despite appreciating its risks; and (3) the injury she sustained was the same as that which she appreciated and assumed." *Dalton v. The Little Lion*, No. 19-5358, 2021 WL

---

[18] Sanner asserts that video footage of the incident was deleted by the Loparis. (Doc. 40, at 41). The Loparis testified that the footage was likely automatically deleted, as their device "deletes on Sunday nights." (Doc. 42-9, at 7). Sanner states because there was spoilation of evidence, whether due to negligence or done intentionally, the Court may provide a "negligent inference charge to the jury" such that "a fact finder can infer the evidence would be favorable to the plaintiff." (Doc. 40, at 43, 44 n.3). As there are still multiple questions of fact to be resolved in this case, the Court will defer a more comprehensive review of the spoilation issue to later in this litigation. (Doc. 40, at 43).

1293424, at *4 (E.D. Pa. Apr. 7, 2021); see *Bullman v. Giuntoli*, 761 A.2d 566, 573 (Pa. Super. Ct. 2000); see also *Murphy v. Excel Site Rentals LLC*, No. 4:17-CV-02353, 2019 WL 3387661, at *6 (M.D. Pa. July 26, 2019). Summary judgment is appropriate "[o]nly where the evidence reveals a scenario so clear as to void all questions of material fact concerning the plaintiff's own conduct. . ." *Montagazzi v. Crisci*, 994 A.2d 626, 636 (Pa. Super. Ct. 2010).

Amato and the Loparis argue that because Sanner knew there was ice and snow on the driveway, she assumed the risk of falling by traversing on it. (Doc. 35, at 9; Doc. 37, ¶¶ 67-69). In opposition, Sanner argues that there was "no 'alternative course' for [] Sanner to take to avoid the dangerous condition."[19] (Doc. 40, at 22; Doc. 42, at 48). Because this case does not involve "a scenario so clear as to void all questions of material fact," the Court will deny summary judgment on the basis of assumption of the risk. *Montagazzi,* 994 A.2d at 636.

Whereas the record demonstrates Sanner arguably appreciated the risk of walking on the snow-covered, icy, driveway and sustained injuries as a result of her fall thereon, there is an issue of material fact as to whether Sanner had "no safe alternative to encountering the risk." (Doc. 34, at 50, 68-70; Doc. 38-2, at 20); *Kaplan,* 126 F.3d at 226. Reasonable minds could disagree as to whether it was necessary that Sanner traverse the driveway during the

---

[19] Sanner avers "the Assumption of the Risk Doctrine is likely no longer the law in the Commonwealth." (Doc. 40, at 21-22; Doc. 42, at 24). Because other United States district courts in Pennsylvania have analyzed assumption of the risk as an affirmative defense in cases involving travel over ice and snow at the summary judgment stage, this Court will analyze Amato and the Loparis' assumption of the risk claim in accordance with recent case law. *Roessing v. United States*, No. 3:19-CV-161, 2021 WL 1663590, at *6-8 (W.D. Pa. Apr. 28, 2021) (granting summary judgment to defendants after applying the assumption of the risk doctrine and determining plaintiff had voluntarily assumed the risk of traversing ice and snow).

13

storm.[20] A reasonable fact finder could determine that Sanner could have waited for the storm to pass before attempting to walk on driveway or that she could have requested a later check-out time given the dangerous condition. A reasonable fact finder could also conclude it was necessary that Sanner aid in clearing the cars of snow before road conditions worsened. Because there is a question of fact regarding whether Sanner voluntarily assumed the risk of walking on the driveway, and in consideration of the "principle that the existence of neglect of a duty is typically a question of fact for the jury," summary judgment would not be proper on this ground.[21] *Markowski v. Sordoni Constr. Servs., Inc.*, No. 3:13-CV-02255, 2015 WL 12425470 (M.D. Pa. Nov. 25, 2015); *see Kaplan*, 126 F.3d at 226.

---

[20] Sanner avers she was legally obligated to clear the snow off her car pursuant 75 Pa. Stat. and Cons. Stat. Ann. § 3721. (Doc. 41, ¶ 15) While this statute was not enacted until over a year after the incident, a reasonable mind could still conclude clearing a car of snow is required for safe driving, and therefore it was necessary that Sanner enter onto the driveway to help clear snow off the vehicles. (Doc. 41, ¶ 15); 75 Pa. Stat. and Cons. Stat. Ann. § 3721. However, a reasonable mind could also find that because Dimaggio and Glinski were already clearing the cars, Sanner did not need to assist and therefore needlessly assumed a known risk. (Doc. 38, at 4-5).

[21] Both Amato and the Loparis also argue they did not have notice of the dangerous condition on the premises. (Doc. 35, at 8; Doc. 38, at 6); *see Ferraro v. United States*, No. CIV.A. 3:11-1766, 2014 WL 4828150, at *5 (M.D. Pa. Sept. 29, 2014) (supplying, when the hills and ridges doctrine applies, plaintiff still must "show that defendant had constructive notice of the dangerous conditions.") Sanner argues she is not obligated to prove notice "because defendants played a part in creating the dangerous condition." (Doc. 40, at 11; Doc. 42, at 18). Because there are still questions of fact surrounding Amato and the Loparis role in creating the dangerous condition, or whether the condition was the result of the natural accumulation of snow and ice, notice would be improperly decided at this juncture. *See Cortes v. BJ'S Wholesale Club*, 843 F. App'x 463, 466 (3d Cir. 2021) (finding that when there is a "genuine dispute of material fact" surrounding constructive notice, the issue is better decided by a jury); *see also Ferraro*, 2014 WL 4828150, at *6 (finding a specific question about how long the snowy conditions had been on the premises and whether the condition had been created by snow that had fallen off a vehicle or because of natural weather conditions the day of the accident).

For the foregoing reasons, Amato and the Loparis' motions for summary judgment are **DENIED.** (Doc. 34; Doc. 37).

Dated: March 29, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**